IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAROLYN K. MOTLEY,

      Plaintiff,                      No. CIV S-09-0936 DAD

      v.

MICHAEL J. ASTRUE,                ORDER
Commissioner of Social Security,

      Defendant.

_____/

      This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment. For the reasons explained below, plaintiff's motion is denied and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

      In July 2006, plaintiff applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act), alleging disability beginning on July 1, 2006, based on asthma, hernia, hearing loss, obesity, borderline diabetes, history of cancer, insomnia, and history of gallstones. (Transcript (Tr.) at 89-95, 99-100.) The application was denied initially on October 17, 2006, and upon reconsideration on February 26, 2007. (Tr. at 63-67, 70-75.) Pursuant to plaintiff's timely request, a hearing was held before an administrative law judge

1

(ALJ) on December 11, 2007.  (Tr. at 33-60, 78.)  Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert.  (Tr. at 33-34, 37-44, 45-59.)  In a decision issued on June 23, 2008, the ALJ determined that plaintiff had not been under a disability since July 17, 2006, the date her application was protectively filed.  (Tr. at 10-25.)  The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since July 17, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: chronic obstructive pulmonary disease with moderate to severe obstructive defect, sensorineural hearing loss in the bilateral ears, left greater than right, right-sided inguinal hernia, status post hernia repair and morbid obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that since July 17, 2006, the claimant has retained the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally, to stand/walk for about six hours in an eight hour day, and to sit for about six hours in an eight hour day.  The claimant will require an at-will sit/stand option.  The claimant will also have postural limitations that preclude climbing ladders, ropes or scaffolds, and crawling and that preclude more than occasional climbing of stairs, crouching, kneeling or stooping, as well as environmental limitations that preclude working around hazards, dangerous machinery, poor ventilation, heights, and strong or concentrated levels of noxious fumes, smoke, noises, dust, pollen or other allergans [sic].  The claimant does have some limitations in hearing and needs a hearing aid, however, he [sic] is able to read, write and effectively communicate in English.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on June 17, 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

/////

7. The claimant has a limited education, having completed only through the 11th grade, but she is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 17, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 13-25.) On February 5, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 6, 2009.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

3

substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////

# APPLICATION

Plaintiff seeks an order finding her disabled and reversing the Commissioner's decision or, in the alternative, an order of remand for a new hearing. Plaintiff asserts three principal errors. First, plaintiff argues that the ALJ failed to properly characterize the limitations assessed by Dr. Garg, a consultative examiner, and failed to provide clear and convincing reasons for rejecting the limitations assessed by Dr. Vanderberg, plaintiff's treating physician. Second, plaintiff contends that the ALJ failed to properly assess her residual functional capacity (RFC), failed to pose a legally adequate hypothetical question to the vocational expert (VE), and failed to credit the VE's testimony in response to a hypothetical question that most accurately reflected plaintiff's limitations. Third, plaintiff asserts that the jobs identified by the VE in response to the ALJ's hypothetical questions were not consistent with the Dictionary of Occupational Titles (DOT). Each argument is addressed below.

**I.  ALJ's Consideration of the Limitations Assessed by Dr. Garg and Dr. Vanderberg**

Plaintiff argues that the ALJ blatantly omitted one of the limitations assessed by examining physician Dr. Garg and rejected treating physician Dr. Vanderberg's assessment in its entirety.

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). Of course, the ALJ need not give controlling weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, and an opinion controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. In order to meet the burden of setting forth specific, legitimate reasons for giving less weight to the controverted opinion of a treating physician, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, explain his interpretation of the evidence, and make specific findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In developing the record and interpreting the evidence, the ALJ must explain why any significant probative evidence has been rejected and must reach a decision supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is contradicted by another doctor, the opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original). See id. at 831-32 (holding that the ALJ's rejection of the opinions of a treating physician and an examining psychologist was not warranted where the rejection was based on a nontreating, nonexamining doctor's opinion supplemented only by unsupported and unwarranted speculation that the treating and examining doctors were misrepresenting the claimant's condition or were not qualified to evaluate it); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence for rejecting the opinions of treating or examining physicians); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

1984) (holding that the report of the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's decision to reject the examining physician's opinion that the claimant was disabled).

### A. Dr. Garg's Assessment

After plaintiff applied for Social Security disability benefits in July 2006, a consultative examination was obtained from Amul Garg, M.D., who is Board Certified in Internal Medicine. (Tr. at 257-61.) Dr. Garg performed a complete orthopedic evaluation of plaintiff on September 25, 2006, and rendered the following functional assessment:

> The claimant would be expected to stand and walk for about six hours in an eight-hour workday with breaks due to her asthma and also inguinal pain. The claimant could be expected to sit for at least six hours in an eight-hour workday with breaks due to her inguinal pain. She does not need any assistive device. The claimant could be expected to lift 20 pounds occasionally and 10 pounds frequently. Limitation on account of her inguinal pain and also her asthma. The claimant can do bending, stooping, and crouching occasionally. Limitation because of her inguinal pain. The claimant does not have any manipulative limitations. The claimant has no visual or communicative limitations. She should not work in hazardous occupations or at heights due to her medications. The claimant should also not be exposed to strong fumes or smells. She should not work at temperature extremes or areas with dust or high pollen count because of her asthma.

(Tr. at 260-61.) Plaintiff contends that the ALJ erred in failing to include in his own RFC assessment a limitation regarding breaks during a workday.

The court finds plaintiff's argument unpersuasive. It is not unreasonable to read the phrase "an eight-hour workday with breaks" as simply a description of the standard workday. Dr. Garg's functional assessment is notably complete, as he carefully specifies which condition or conditions warrant each limitation he has assessed. The six-hour limitation on standing and walking and the weight limitations on lifting are based on plaintiff's inguinal pain and asthma, while the six-hour limitation on sitting and the postural limitations are based solely on plaintiff's inguinal pain. If Dr. Garg had intended to assess special break requirements, it appears to the

court that Dr. Garg would have specified a minimum interval between breaks, a specific number of breaks during the day, or breaks at will.

Work breaks usually consist of a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. See Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *6 (July 2, 1996). The RFC assessment forms completed by state agency physicians specify "with normal breaks" in the entries reflecting limitations on a claimant's ability to sit and to stand and/or walk. (See tr. at 299.) It is reasonable to infer that the ALJ in this case assumed such normal breaks in his own assessment and that he did so based on an inference that Dr. Garg was referring to such normal breaks. The ALJ adopted Dr. Garg's assessment virtually in its entirety and added that "[t]he claimant will require an at-will sit/stand option." (Tr. at 18.) Such a limitation is described in SSR 96-9p as appropriate when an individual needs to alternate sitting and standing or walking and the need cannot be accommodated by scheduled breaks and a lunch period. SSR 96-9p at *7. The ALJ's RFC assessment gives plaintiff the maximum flexibility by specifying a requirement that plaintiff be able to alternate sitting with standing or walking at will. The ALJ also included the sit/stand option in the hypothetical question he posed to the VE. (Tr. at 50.)

The court is unable to find that the ALJ improperly characterized the limitations assessed by Dr. Garg, and it appears that the ALJ did give, as he indicated, "much consideration" and "substantial weight" to the limitations assessed by Dr. Garg. (See tr. at 14-15, 20-21.) Dr. Vanderberg did not indicate that plaintiff requires any breaks in addition to normal breaks and did not suggest the number, frequency, or length of any such breaks. Nonetheless, the ALJ incorporated in his own RFC assessment a sit/stand option that would provide plaintiff with breaks from sitting and breaks from standing and walking.

### B. Dr. Vanderberg's Assessment

At the administrative hearing conducted on December 11, 2007, plaintiff's counsel presented a form assessment signed simply "Dwayne Vanderberg." (Tr. at 360-62.) The

8

form is titled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" and indicates that it is to be completed by the claimant's treating physician. Counsel representing plaintiff in the administrative proceedings informed the ALJ that she had obtained this assessment from plaintiff's doctor the previous day and had learned from the assessment that plaintiff had a breathing test the previous month. (Tr. at 42.) When the ALJ inquired about the breathing test record, counsel stated that she didn't have the test record since she had only just learned about the test. While plaintiff's testimony at the administrative hearing is confusing at best, it appears that Frank Martinez, a physician's assistant at Peach Tree Clinic (see tr. at 351), where plaintiff had been treated since at least February 24, 2005 (see tr at 262-97, 310-40, 343-59) had referred her to Dwayne Vanderberg because "he's a real doctor, an MD." (Tr. at 42.) Dr. Vanderberg gave plaintiff a breathing test and referred her to another doctor for a hearing test. (Tr. at 42-43.) At the end of the administrative hearing, plaintiff's counsel asked for two weeks to submit additional medical records, and the ALJ granted her more than a month. (Tr. at 59-60.) Counsel submitted breathing test results from Rideout Memorial Hospital dated November 13, 2007, showing Dr. Vanderberg as the referring M.D. (Tr. at 364-69.) In her cover memo citing "medical records" as the subject, counsel stated that "[t]here are no more records to be submitted." (Tr. at 363.)

It appears that the administrative record contained no mention of Dr. Vanderberg until his assessment was provided to the ALJ at the administrative hearing. Plaintiff had never identified him as one of her physicians in any disability report, and the court is unable to find his name on any of the records from various clinics and hospitals. On a form completed by plaintiff on a date between February 26, 2007, and May 17, 2007, plaintiff indicated that she had an appointment with a new doctor whose name she did not know and that Frank Martinez was sending her to the doctor, a hearing specialist, for more tests on her ears. (Tr. at 160-64.) Whether this is a reference to Dr. Vanderberg is unknown. There are no treatment records from Dr. Vanderberg, and the entire record as to the care rendered by him to plaintiff prior to the

ALJ's decision consists of the form assessment dated December 10, 2007 and the breathing test results dated November 13, 2007, showing Dr. Vanderberg as referring physician. Plaintiff's counsel subsequently submitted to the Appeals Council a form verifying plaintiff's disability status for purposes of the Food Stamp Program on November 10, 2008. (Tr. at 88.) The latter document indicates that plaintiff is mentally and/or physically unfit for gainful employment as a result of her hearing loss and osteoarthritis. (Id.)

The assessment form completed by Dr. Vanderberg on December 10, 2007, instructs the treating physician to identify particular medical findings that support the assessment of any limitations. (Tr. at 360.) Dr. Vanderberg indicated that plaintiff's abilities to lift and carry are affected by her impairments, but he completed the form incorrectly, writing "yes" on the line where the form requires the number of pounds plaintiff can lift and/or carry occasionally and did not indicate the number of pounds she can lift and/or carry frequently. Moreover, no medical findings were identified in support of his conclusion that plaintiff's impairments affect her ability to lift and/or carry. Dr. Vanderberg indicated that plaintiff's abilities to stand and walk are also affected by her impairments and opined that she can stand and/or walk four to five hours in an eight-hour day, and can stand and/or walk for one hour without interruption. He again failed to identify any medical findings that support his conclusion in this regard. Dr. Vanderberg found that plaintiff's ability to sit is not affected by her impairments. (Tr. at 361.) He indicated that plaintiff can occasionally bend, climb, balance, stoop, crouch, crawl, and kneel. He determined that her ability to reach, handle, push/pull, and hear are affected by her impairments, explaining that "any activity that requires exertion could cause significant dyspnea" and citing pulmonary function tests showing moderately severe dyspnea and plaintiff's complaints of musculoskeletal pain. (Tr. at 361-62.) Dr. Vanderberg assessed environmental restrictions as to moving machinery, temperature extremes, chemicals, dust, fumes, and humidity, but not as to heights, noise, or vibrations. (Tr. at 363.) He explained that poor air quality, temperature extremes, and humidity extremes could cause severe dyspnea. He concluded

with an assessment that plaintiff has moderate to severe hearing loss as shown by a March 14, 2007 audiology report.

The ALJ's decision acknowledges the two documents that at the time of the decision comprised the record regarding Dr. Vanderberg's treatment of plaintiff. (Tr. at 10.) The ALJ relied on the pulmonary function test results in his determination of plaintiff's severe impairments (tr. at 13), and he found that Dr. Garg's consultative evaluation, the state agency physicians' medical reviews, and Dr. Vanderberg's assessment all demonstrated that plaintiff has significant limitations in lifting, walking, standing, and sitting caused by her severe impairments (tr. at 14-15). The ALJ determined that plaintiff has the RFC to perform substantially all of the full range of unskilled work at the light exertional level, with the limitations cited above. (Tr. at 18.) In support of that determination, the ALJ discussed the medical evidence of record at length (tr. at 19-23), concluding with a discussion of Dr. Vanderberg's assessment (tr. at 22-23). After summarizing Dr. Vanderberg's opinions, the ALJ offered the following reasons for his rejection of those opinions:

> In assigning weight to Dr. Vanderberg's opinions, the undersigned notes that there are no significant records from Dr. Vanderberg that would categorize him as the claimant's treating physician. Moreover, the undersigned notes that Dr. Vanderberg did not cite any objective signs or reports in support of his opinion except for the abnormal PFT studies, instead relying on the claimant's self-reports of musculoskeletal pain (Exhibit 14F[1]). Given the lack of support found in the medical record and the claimant's lack of credibility especially concerning the intensity and frequency of asthma attacks and breathing machine treatments, the undersigned is unable to credit Dr. Vanderberg's assessment (SSR 96-6p).

(Tr. at 23.)

Plaintiff contends first that the ALJ's questions about Dr. Vanderberg's status as a treating physician should have led him to "re-contact" the physician to develop the record. This

---

[1] Exhibit 14F contains the pulmonary function test records provided to the ALJ after the hearing. (Tr. at 363-69.) The correct citation in this instance is Exhibit 13F, which is Dr. Vanderberg's assessment. (Tr. at 360-62.)

11

argument is not compelling for several reasons.  It appears that plaintiff was not treated by Dr. Vanderberg prior to 2007, and the agency had never contacted Dr. Vanderberg for records because plaintiff had never reported him as one of her physicians.  Plaintiff's administrative counsel took responsibility for obtaining records from Dr. Vanderberg, produced the few documents that are in the record, and indicated in her December 18, 2007 memo to the ALJ that there were no additional medical records to be submitted.  Apparently there were no more records to be submitted a year later, after Dr. Vanderberg had been treating plaintiff for at least a year, as the only document administrative counsel submitted to the Appeals Council was the verification of disability for the Food Stamp Program dated November 10, 2008.  (Tr. at 87-88.)

Next, plaintiff cites evidence that supports Dr. Vanderberg's reliance on plaintiff's complaints of musculoskeletal pain.  In this regard, plaintiff appears to miss the ALJ's point.  If Dr. Vanderberg was aware of the evidence cited by plaintiff, he should have cited that evidence or evidence based on his own examination of plaintiff, as plaintiff's complaints did not constitute "medical findings" that supported his assessment of plaintiff's abilities to reach, handle, push/pull, and hear.

Third, plaintiff challenges what she perceives as the ALJ's rejection of Dr. Vanderberg's assessment based on plaintiff's alleged lack of credibility.  This argument is unpersuasive because the ALJ did not reject Dr. Vanderberg's entire assessment because of his conclusions regarding plaintiff's credibility.  The ALJ rejected Dr. Vanderberg's assessment because the physician did not cite any medical findings other than the pulmonary function tests and otherwise relied on the patient's complaints, which the ALJ found unreliable because her complaints concerning the intensity and frequency of asthma attacks and breathing machine treatments were not supported by the record.  The key to the rejection of Dr. Vanderberg's assessment was the lack of treating records, which one would expect from a treating physician, and the failure to cite medical findings, either his own or those of other physicians who had treated plaintiff.

The court finds that plaintiff has failed to demonstrate that Dr. Vanderberg's assessment should have been credited as a whole or in any part. The physician failed to indicate weight limits for lifting and/or carrying and offered no medical findings in support of his assessments that plaintiff could only stand and/or walk for four or five hours in an eight-hour workday but had no limitations on sitting. Dr. Vanderberg's limitations on plaintiff's postural limitations are not markedly different from those assessed by Dr. Garg and the ALJ, but, as discussed above, he offered no medical findings other than the pulmonary function tests to support limitations on reaching, handling, and pushing and/or pulling. Dr. Vanderberg's assessments are conclusory opinions supported by minimal clinical findings, and the ALJ was not required to give those assessments controlling weight. Meanel 172 F.3d at 1113-14; Magallanes, 881 F.2d at 751.

### C. Plaintiff's Residual Functional Capacity (RFC)

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). The record in this case includes medical records from 2004 through 2007. During that time, plaintiff was treated by many medical professionals, including Dr. Vanderberg at the end of that time span, for various conditions over various periods of time. The court finds that the medical records contain substantial evidence supporting the ALJ's assessment of plaintiff's RFC.

It must be kept in mind that the court's scope of review of decisions granting or denying Social Security disability is limited. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) (observing that Congress has mandated a very limited scope of judicial review of the Commissioner's decisions granting or denying Social Security disability benefits). The court must consider the record as a whole, taking into account both the evidence that supports and the evidence that detracts from the Commissioner's decision; it is not the

1  court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's.
2  <u>Winans v. Bowen</u>, 853 F.2d 643, 644-45 (9th Cir. 1987).  Moreover, if there is conflicting
3  evidence supporting a finding of either disability or nondisability, the ALJ may resolve the
4  conflict so long as there is "more than one rational interpretation of the evidence."  <u>Sprague</u>, 812
5  F.2d at 1230.  <u>See</u> <u>also</u> <u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir.
6  1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if
7  the evidence can support either outcome, the court may not substitute its judgment for that of the
8  ALJ.").

In finding it unnecessary to impose a specific limitation regarding breaks and in rejecting Dr. Vanderberg's unsupported and conclusory opinion, the ALJ in this case properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the medical testimony.  <u>See</u> <u>Magallanes</u>, 881 F.2d at 750.  For these reasons, plaintiff is not entitled to summary judgment on her claim that the ALJ failed to properly characterize the limitations imposed by Dr. Garg and failed to provide clear and convincing reasons for rejecting the more extreme limitations assessed by Dr. Vanderberg.

## II.    RFC Assessment and Hypothetical Questions Posed to VE

The court has carefully considered plaintiff's argument that the ALJ failed to properly assess her RFC, failed to pose a legally adequate hypothetical question, and failed to credit testimony of the VE in response to counsel's hypothetical question.

For the reasons set forth above, the court has found that the ALJ reasonably concluded that plaintiff retains the RFC to perform substantially all of the full range of requirements of unskilled work at the light exertional level, with an at-will sit/stand option and with extensive postural and environmental limitations.  (<u>See</u> tr. at 18.)  The court now also finds that all of these limitations supported by the record were reflected in the hypothetical question posed by the ALJ.  (<u>See</u> tr. at 49-50.)  Accordingly, plaintiff is not entitled to summary judgment in her favor with respect to this claim because the ALJ's determination of her RFC was proper

and the hypothetical question posed to the vocational expert was not deficient. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (ALJ is required to question a vocational expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions).

### III. Consistency of Jobs Identified by VE with DOT

An ALJ is required to inquire on the record as to whether any testimony given by a vocational expert is consistent with the DOT. If there is a conflict, the ALJ must resolve it by determining whether the vocational expert's explanation for the conflict is reasonable and justifies reliance on that expert's testimony rather than on the DOT information. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). The Ninth Circuit has held that the ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).[2] However, failure to make the requisite inquiry is harmless where there is no conflict or where the vocational expert's testimony provides sufficient support to justify any potential conflict. Id. at 1154 n.19.

Here, plaintiff acknowledges that the VE testified that his testimony was consistent with the DOT but argues that the jobs identified by the VE based on the ALJ's hypothetical question were not consistent with the DOT. Plaintiff notes that the hypothetical individual described by the ALJ has a limited education, specifically in Special Education, and no prior work history. Plaintiff asserts that the jobs of cashier, storage facility clerk, and check cashier require a DOT reasoning level of 3, and the small parts assembly job requires a DOT

/////
/////
/////

---

[2] The administrative hearing in this case was held on December 11, 2007. The Ninth Circuit filed its decision in Massachi on May 11, 2007.

reasoning level of 2.[3]  Plaintiff contends that reasoning levels 2 and 3 would be beyond the reasoning level of a person with a limited education who required Special Education classes. Plaintiff argues further that the job of cashier requires a DOT mathematical level of 2 and the jobs of storage facility clerk and check cashier require a DOT math level of 3, which would also be beyond the hypothetical person's level.[4]  Plaintiff contends that the ALJ was not justified in relying on the VE's testimony when he determined that jobs exist in significant numbers in the national economy that plaintiff can perform.

        Although plaintiff has cast her argument as one concerning inconsistency between the VE's testimony and the DOT, there is no such inconsistency in this case.  Plaintiff's argument really concerns whether the jobs selected by the VE are consistent with the abilities of the hypothetical person, i.e., plaintiff's abilities.  The ALJ described the hypothetical person as having "a limited education through the 11th grade with Special Education" but having no communicative limitations.  (Tr. at 49-50.)  Plaintiff's counsel at the administrative hearing assumed the same characteristics for her hypothetical questions and did not object to the levels of

---

[3] The DOT uses a scale of six levels, with 6 being the highest, to describe the reasoning development required for the job.  At reasoning level 3, the employee is required to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."  At reasoning level 2, the employee is required to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT App. C (4th ed. rev. 1991), 1991 WL 688702.

[4] The DOT uses a scale of six levels, with 6 being the highest, to describe the mathematical development required for the job.  At mathematical level 3, the employee may be required to "[c]ompute discount, interest, profit, and loss; commission, markup, and selling price; ratio and proportion; and percentage" as well as to "[c]alculate surfaces, volumes, weights, and measures."  In addition, level 3 requires knowledge of algebra to "[c]alculate variables and formulas; monomials and polynomials; ratio and proportion variables; and square roots and radicals" and knowledge of geometry to "[c]alculate plane and solid figures, circumference, area, and volume" and "[u]nderstand kinds of angles and properties of pairs of angles."  At mathematical level 2, the employee may be required to "[a]dd, subtract, multiply, and divide all units of measure," "[p]erform the four operations with like common and decimal fractions," "[c]ompute ratio, rate, and percent," "[d]raw and interpret bar graphs," and "[p]erform arithmetic operations involving all American monetary units."  DOT App. C (4th ed. rev. 1991), 1991 WL 688702.

reasoning and mathematical development required for the jobs described by the VE.  (Tr. at 56.)

Plaintiff has not cited any evidence in the record concerning limitations on her ability to reason or her mathematical knowledge.  Plaintiff did not claim that she suffered from a mental impairment, and none was found by the ALJ.  (Tr. at 10, 13-15.)  The ALJ determined that plaintiff is able to read, write, and effectively communicate in English.  (Tr. at 18.)  He concluded that plaintiff can perform unskilled work that involves little or no judgment and simple duties that can be learned on the job in a short period of time.  (Id.)  At the hearing, in response to the ALJ's questions about transferable skills and "developed skills," the VE testified that "just living" and obtaining an 11th grade education, "learning how to count, do simple math" would provide a person with "developed skills" appropriate for "unskilled entry-level positions."  (Tr. at 49.)

In the absence of evidence that plaintiff's reasoning and math skills fall below the DOT requirements for reasoning and mathematical levels 1, 2 and 3 on a scale of 6, the court does not find that the mere fact of plaintiff's having completed the 11th grade in Special Education requires a conclusion that she is unable to perform the unskilled jobs cited by the VE and accepted by the ALJ as evidence that there jobs that plaintiff can do that exist in significant numbers in the national economy.  In particular, the job of small products assembler requires a mathematical development level of 1 and a reasoning development level of 2.  DOT 706.684-022, 1991 WL 679050.  The VE testified that there are at least 2,000 such jobs in the Sacramento area, at least 30,000 in California, and at least 350,000 nationally, all with the sit/stand option available.  (Tr. at 51.)  Moreover, the VE testified that the job of small products assembler is only one of many assembler jobs, all of which are unskilled light work and many of which can accommodate a sit/stand option.  Thus, even if plaintiff's reasoning and mathematical development levels do not exceed 2 on the 6-level scale, it appears that the ALJ was justified in relying on the VE's testimony when he determined that jobs exist in significant numbers in the national economy that plaintiff can perform.  Accordingly, the court finds that plaintiff is not

entitled to summary judgment on her argument of alleged inconsistency between the VE's testimony and the DOT.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's March 18, 2010 motion for summary judgment (Doc. No. 23) is denied; and

2. The decision of the Commissioner of Social Security is affirmed.

DATED: December 17, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/motley0936.order